IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FLOYD E. PATTERSON, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 16-1604 |
| | : | |
| JANINE L. QUIGLEY, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                 **March 30, 2018**

      Pro se Plaintiff Floyd E. Patterson, Jr., an inmate in the State Correctional Institute at Somerset brings claims pursuant to 42 U.S.C. § 1983 against Defendants Warden Janine L. Quigley, Lieutenant Miguel Castro, and Correctional Officers Cunningham, Dew, and Gurry for constitutional violations that occurred while he was incarcerated at Berks County Jail.[1] Warden Quigley and Lieutenant Castro (Administrative Defendants) and Correctional Officers Cunningham, Dew, and Gurry (Correctional Officer Defendants) move separately to dismiss Patterson's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, both Administrative Defendants' and Correctional Officer Defendants' motions to dismiss will be granted in part and denied in part.

**BACKGROUND[2]**

      Patterson asserts various constitutional violations that occurred while he was incarcerated at Berks County Jail (Berks) between February 14, 2014, and July 28, 2015.

---

[1] Patterson informed the Court he was a sentenced inmate rather than a pre-trial detainee at the time of the alleged incidents during oral argument on a previously-filed motion to dismiss in this case.

[2] Except where otherwise specifically noted, the following facts are from Patterson's Amended Complaint, the allegations of which the court accepts as true for purposes of deciding the instant motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding a court considering a Rule 12(b)(6) motion to dismiss should "assume the[] veracity" of the Complaint's "well-pleaded factual allegations").

1

Patterson, a Muslim, alleges he was prevented from exercising his right to practice his religion. At Berks, Special Operations Group (SOG) personnel, including Officer Gurry, were present with firearms during religious Muslim services and prevented inmates from shaking hands or exchanging religious greetings. When Patterson brought a grievance challenging this limitation, Lieutenant Castro refused to entertain it. He informed Patterson that any talking during service must be within the context of the service, and SOG could threaten to remove inmates who talked outside the context of the service. Am. Compl. 4. On two or three occasions after he was removed from religious service, he was prevented from attending weekly prayer services for up to a month at a time. Additionally, when he signed up to attend services, he was prevented from going because his name was left off of a separate list—which documented the names of inmates who were allowed to leave the block—that was on one occasion controlled by Officer Dew. *Id.* at 5. Finally, the presence of guns during service prevented him from focusing on prayer.

At Berks, Patterson was also subject to unnecessary strip searches on many occasions. *Id.* at 6. During these "various and plentiful strip searches," Officer Cunningham made "cruel jokes that end[ed] up leading to sexual and cruel request[s]," including "being forced to jerk [Officer Cunningham] off." *Id.* Officer Cunningham threatened to assault Patterson, or have him charged with assault, if he did not do as he was told. Officer Cunningham also told him about his "connections to other jails and state prisons so that [Patterson] would not speak out about the events that transpired." *Id.* at 7. Patterson initially stayed quiet, but he later "secretively" sought treatment from the Medical/Psych Department in May 2014. *Id.* In June 2014, he reached out to Warden Quigley, who pushed his complaints and issues "under the rug." *Id.*

In addition, Patterson was subject to a variety of poor living conditions while he was at Berks. The living conditions were unsanitary because they were "totally infested" with black mold, to the point where some jail cells had three out of four walls covered with mold. *Id*. at 10. Patterson was forced to eat, sleep, and live within arm's reach of his toilet. Additionally, when he was sent to solitary confinement for fighting, he was forced to eat food loaf for a total of 20-25 days, even though the use of food loaf as punishment was generally reserved for inmates with a history of food-related problems.

Patterson had a variety of physical injuries ignored or not taken seriously by Berks personnel. His medication was switched and canceled. He was required to fill out a "sick-call" slip, even when he was experiencing a medical emergency, such as chest pain or an anxiety attack. He was not given proper medical treatment after he injured his hand and ankle during recreation hour, and he was unable to review the x-ray results of his hand. *Id*. at 9, 12.

Pursuant to the policy of Lietenant Castro's Administrative Department, he was also subject to "unit-actions," disciplinary actions taken for violations of "living unit rules." These disciplinary actions took place without a hearing to determine guilt or innocence.

Patterson made numerous complaints to jail officials. Because he filed these grievances, he was retaliated against. Specifically, at least one of his grievances was returned with male genitalia drawn on it; when he informed Warden Quigley about his vandalized grievance, she declined to take any action because of a lack of evidence. Through the month of July and August 2014, Officers Dew and Gurry searched his cell block eleven times, and on one occasion, they stole one of his books. Retaliation against him also included losing his job, being harassed and assaulted by Berks personnel, getting poor medical treatment, having his medical documents withheld, and generally being in danger.

Based on the foregoing, Patterson filed the instant action on April 4, 2016, against the Administrative Defendants and several commissioners from Berks County. He then filed an Amended Complaint on June 6, 2017, dropping his claims against the commissioners[3], retaining his claims against the Administrative Defendants, and asserting new claims against the Correctional Officer Defendants.[4] In his Amended Complaint, Patterson alleges violations of his First, Eighth, and Fourteenth Amendment rights. He also alleges Defendants generally violated his civil rights by forcing him to live in unsafe conditions, subjecting him to sexual harassment, depriving him of proper medical attention, and retaliating against him for complaining about the violation of his rights. *See* Am. Compl. 3. Administrative Defendants filed a motion to dismiss on June 20, 2017, to which Patterson responded on August 10, 2017. Correctional Officer Defendants filed a motion to dismiss on August 15, 2017, to which Patterson failed to respond.

**DISCUSSION**

To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[3] While Berks County Commissioners Kevin Bernhardt, Mark Scott, and Christian Leinbach were originally named as Defendants in Patterson's initial Complaint, their names have been removed from the caption of the Amended Complaint as well as the body of the Amended Complaint. The Court thus finds Patterson has dropped his claims against them.

[4] Correctional Officer Defendants contend Patterson's claims against them are time-barred. They argue that the statute of limitations for § 1983 claims in Pennsylvania is two years, and the claims against them are predicated on events that occurred between May and August 2014. Because Patterson did not file his Amended Complaint against them until June 2017, they assert it is untimely. While the Court agrees that Patterson's claims are subject to a two-year statute of limitations, *see Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002), Patterson's claims span a time period between February 14, 2014, and July 28, 2015. Based on this time period, the latest the statute of limitations could begin to run was July 28, 2015. The Court finds Patterson's June 6, 2017, Amended Complaint against the Correctional Officer Defendants timely for the purposes of this motion.

A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Where, as here, the plaintiff is proceeding pro se, the Court must construe the complaint liberally, accept as true all well-pleaded factual allegations therein, and draw all reasonable inferences in the plaintiff's favor. *See Pearson v. Sec'y Dep't of Corr*., 775 F.3d 598, 604 (3d Cir. 2015).

Patterson brings this action pursuant to § 1983, which "provides a cause of action against 'every person who,' under color of state law, 'subjects, or causes to be subjected,' another person to a deprivation of a federally protected right." *Barkes v. First Corr. Med., Inc*., 766 F.3d 307, 316 (3d Cir. 2014) (quoting 42 U.S.C. § 1983), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). To be liable under § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). If a plaintiff seeks to hold a supervisor liable for acts undertaken by subordinates, liability may attach only if the supervisor (1) "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct," or (2) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316.

Patterson's first claim against Defendants concerns Defendants' interference with his practice of religion. He alleges the presence of guns during religious services generally prevented him from focusing on prayer. Defendants also prevented him from engaging in religious exchange with other inmates. For example, he was prevented from shaking hands and engaging in religious rituals with other inmates during and after Islamic services. On one

5

specific occasion, Officer Gurry made threatening statements to Patterson and told Patterson "to shut up" or that he would make him leave during the service. *See* Corr. Officer Defs.' Mem. of Law, Ex. B, at 2. On several occasions after he was removed from religious service, he was banned from attending weekly prayer services for one to four weeks. At least on one occasion, Officer Dew exercised control of the list of inmates who could leave their block to attend services, and Patterson's name was often kept off this list even though he had signed up to attend. Patterson filed grievances and spoke about these issues with Lieutenant Castro. He also wrote Warden Quigley. Both responded to him, but neither intervened.

In response, Warden Quigley and Lieutenant Castro contend that these claims against them should be dismissed because they fail to allege their personal involvement. Officer Gurry argues Patterson's claim does not survive because these limitations were necessary, and Patterson was allowed to practice his religion without unreasonable hindrance. Officer Dew offers no response.

In order to assert a First Amendment Free Exercise Clause claim, a prisoner must allege that the defendant's actions contravene his sincerely held religious beliefs. *See Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). To determine whether the defendant's actions are impinging on a prisoner's right to freely exercise his religion, first, "there must be a valid, rational connection between the prison regulation and the legitimate, neutral governmental interest put forward to justify it." *Small v. Wetzel*, 528 F. App'x 202, 209 (3d Cir. 2013) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Next, the Court must weigh "(2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at de minimis cost to valid penological objectives." *Id*; *see*

*also Heleva v. Kramer*, 214 F. App'x 244, 247 n.1 (3d Cir. 2007) (noting that although the *Turner* test concerns prison regulation, the same test applies when an inmate is challenging individual conduct). "[A] complete bar to the practice of religion is not necessary before the *Turner* analysis applies." *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *9 (M.D. Pa. 2016).

Patterson has alleged a First Amendment Free Exercise claim against Officer Gurry, Officer Dew, Warden Quigley, and Lieutenant Castro. Patterson's pleadings show that he is a practicing Muslim, and he has a sincere belief in Islam. He has alleged officers, including Officers Gurry and Dew, restricted him from practicing his religion. He has also sufficiently alleged that Warden Quigley and Lieutenant Castro "had knowledge of and acquiesced" to these alleged violations because he grieved these issues to them, and while they responded to his grievances, they either condoned the behavior or failed to any action.[5] *See Rode*, 845 F.2d at 1207; Corr. Officer Defs.' Mem. of Law, Ex. B, at 1–3, 5. While Officer Gurry argues "the restriction imposed . . . [is] rationally related to [a] legitimate penological security interest while also balancing inmates' rights to practice their religion," he fails to identify this interest. Construing the factual allegations in Patterson's Amended Complaint in his favor and because "the *Turner* analysis is exceedingly fact-intensive," the Court finds this claim does not "lend itself to resolution on a motion to dismiss," and will survive against Officer Gurry, Officer Dew, Warden Quigley, and Lieutenant Castro. *See Lane*, 2016 WL 7165750, at *9 (citations omitted).

---

[5] While Warden Quigley and Lieutenant Castro state that "it is well-settled that where a defendant's personal involvement is limited to the failure to address an alleged constitutional violation through the grievance system, recovery does not lie under the Constitution or 42 U.S.C. § 1983," they offer no legal authority for this proposition.

The next claim Patterson seeks to assert is based on the strip searches and sexual abuse he was subject to while at Berks. He alleges Officer Cunningham conducted unwarranted strip searches, made sexual comments toward him, and forced him to perform sexual acts, which violated his Eighth Amendment rights.[6] Patterson suggests that Officer Cunningham also prevented him from speaking to anyone about the abuse by threatening him. Patterson further alleges Warden Quigley and Lieutenant Castro were also "personally involved [in this alleged violation] due to Deliberate Indifference" because they had knowledge of the wrongdoing. Patterson Reply 6. In response, Warden Quigley and Lieutenant Castro counter that Patterson has failed to allege any facts that suggest they had personal knowledge or involvement in Officer Cunningham's alleged conduct. Officer Cunningham furthers that Berks's policy of strip searching inmates upon their return from court and his implementation of it are constitutionally permissible. He appears to concede that Patterson has sufficiently alleged a claim with respect to the sexual abuse allegations. *See* Corr. Officer Defs.' Mem. of Law 13 ("[T]here is little doubt that Plaintiff can lodge a claim regarding the manner in which [the searches] [we]re conducted, especially as [they] related to sexual harassment or abuse"). However, he asserts the claim is barred because it has not been exhausted pursuant to the Prison Litigation Reform Act (PLRA).

The Court disagrees that the PLRA serves as an automatic bar to Patterson's Eighth Amendment sexual abuse claim. The PLRA requires prisoners to present their claims through an administrative grievance process prior to seeking redress in federal court. 42 U.S.C. § 1997e(a)

---

[6] While Patterson styles this claim as a violation of the "zero tolerance for Sexual Assault/Harassment policy/law, and the equal protection act given by the 14th Amendment," he refers to the failure of any action taken to prevent his sexual assault/harassment as "deliberate indifference." Am. Compl. 6–8. Because the Court is unable to construe the basis for his Equal Protection claim and has a duty to liberally read the Amended Complaint, the Court will analyze this claim under the Eighth Amendment.

("No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). However, a prisoner is not required to exhaust his claim where a prison's administrative procedures are "unavailable" to him, including when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1853 (2016). Here, Patterson alleges Officer Cunningham threatened to assault Patterson, or have him charged with assault, if he did not do as he was told, and told Patterson about his "connections to other jails and state prisons so that [Patterson] would not speak out about the events that transpired." Am. Compl. 6–7. Taken in the light most favorable to Patterson, these facts support the inference that Officer Cunningham intimidated Patterson and prevented him from grieving Officer Cunningham's conduct, thereby making the grievance process "unavailable" to him. *See Ross*, 136 S. Ct. at 1853.

While Officer Cunningham concedes that Patterson has alleged a claim against him based on sexual abuse allegations, under the Eighth Amendment, "searches do not constitute cruel and unusual punishment unless they are undertaken maliciously or for the purpose of sexually abusing an inmate." *Parkell v. Danberg*, 833 F.3d 313, 336 (3d Cir. 2016) (internal citation and quotation marks omitted). Patterson's claim of unwarranted strip searches therefore fails to rise to the level of an Eighth Amendment violation as a matter of law. *See id.* (holding inmates subject to thrice-daily visual-body cavity searches did not violate the Eighth Amendment). However, as recognized by Officer Cunningham, Patterson's allegation of strip searches coupled with concurrent sexual abuse sufficiently states an Eighth Amendment claim against Officer Cunningham.

This claim, however, cannot withstand Warden Quigley or Lieutenant Castro's motion to dismiss. Although Patterson cites to the grievances he mentions in his Amended Complaint as evidence of their knowledge of Officer Cunningham's conduct, the two grievances concerning sexual abuse or harassment cited fail to describe any specific conduct or behavior on the part of Officer Cunningham so as to make Warden Quigley or Lieutenant Castro aware of Officer Cunningham's alleged improprieties. One grievance, written to Warden Quigley, describes Patterson's feelings after receiving an answered grievance with a drawing of male genitalia on it, and Lieutenant Castro's response to his concerns. *See* Corr. Officer Defs.' Mem. of Law, Ex. A, at 2. In another grievance, Patterson complains of ". . . nightmares of sexual assault and harassment . . . because of a situation that occurred . . ." in the Chester County Prison. *Id.* at 1. Neither mentions Officer Cunningham. Thus, Patterson's Eighth Amendment sexual abuse claim will only survive against Officer Cunningham.

Patterson's next Eighth Amendment claim concerns his living conditions at Berks. Specifically, he alleges was forced to live in a cell with black mold, forced to eat, sleep, and live within an arm's length of a toilet, and given a diet of food loaf for 20-25 days while he was in solitary confinement for fighting. Not all harms violate the Eighth Amendment, however. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For a prison official to be held liable for an Eighth Amendment violation concerning conditions of confinement, first, the "deprivation alleged must be, objectively, sufficiently serious, " that is, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted). Second, "a prison official must have a sufficiently culpable state of mind," which is "deliberate indifference to inmate health or safety." *Id.* To be deliberately

indifferent, the official must know of and disregard an excessive risk to inmate health or safety. *See id*. at 837.

Measured under these standards, Patterson's mold claim falls short. While the mold in Patterson's cell may have been unpleasant, "unpleasant prison conditions in and of themselves do not state a cognizable [E]ighth [A]mendment claim." *Payton*, 798 F. Supp. 258, 261 (E.D. Pa. 1992) ("All that a prison is required constitutionally to give an inmate is a minimal civilized measure of life's necessities." (citation omitted)). Numerous courts have also recognized mold in a prison does not automatically violate an inmate's constitutional rights. *See Williams v. Meisel*, No. 13-4926, 2014 U.S. Dist. LEXIS 134251, at *10–11 (E.D. Pa. Sept. 24, 2014) (citing *Forde v. Fischer*, 2009 U.S. Dist. LEXIS 118178, *4 (D.N.J. Dec. 16, 2009) (allegations of mold on three walls of a cell fails to implicate the Eighth Amendment). In addition, Patterson has not pleaded that the mold made him ill or somehow affected his health, which would provide plausibility that the mold was an excessive risk to his health or safety. Finally, Patterson's Amended Complaint does not contain specific factual allegations that suggest any Defendants were deliberately indifferent to any alleged harm the mold was causing to him. This claim will be dismissed.

With respect to his food loaf claim, the Third Circuit has held that a temporary diet of food loaf, like the one Patterson had, does not rise to the level of an Eighth Amendment violation. *See Dockery v. Beard*, 509 F. App'x 107, 112–13 (3d Cir. 2013) (citing *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (noting temporary diet of nutraloaf does not deny "minimal civilized measure of life's necessities")). Though Patterson does not specify what his food loaf diet consisted of, he does not allege that it made him sick or otherwise "presented an immediate danger to his health or well-being." *See Gannaway v. Berks Cnty. Prison*, No. 09-

4501, 2011 WL 1196905, at *4–6 (E.D. Pa. Mar. 2011) (granting summary judgment on Eighth Amendment claim concerning a five-day-a-week diet of nutra-loaf because the plaintiff did not allege it "presented an immediate danger to his health or well-being"); *see also Maldonado v. McFaden*, No. 94–1477, 1994 U.S. Dist. LEXIS 16837, at *11 (E.D. Pa. Nov. 23, 1994) ("[T]he Eighth Amendment requires only that inmates be provided food that is adequate to maintain health[] and served in a sanitary manner."). Because Patterson has not plead that the food loaf posed a substantial risk of serious harm nor that any Defendant was deliberately indifferent about any risk consuming the loaf may have posed to his health or well-being, this claim will also be dismissed.

Patterson also seeks to assert an Eighth Amendment claim based on inadequate medical care. To state an Eighth Amendment claim based on inadequate medical care, the same definition of deliberate indifference applies—the official must know of and disregard an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition by a physician does not state a valid claim under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Here, Patterson fails to plead facts to show which Defendants, if any, were deliberately indifferent to his alleged serious medical conditions. Patterson asserts his medication was being switched or canceled; that he had to fill out paperwork when he was experiencing chest pain or anxiety; he was not given proper medical treatment after he injured his hand and ankle during recreation hour; and he was unable to review an x-ray of his hand after it was injured. None of these allegations implicate Defendants in any way. Accordingly, Patterson's Eighth Amendment claim for inadequate medical care will be dismissed.

Patterson's next claim concerns Lieutenant Castro's "unit-actions." Patterson alleges these actions, which are used to punish inmates for not following the "living unit rules," violate due process. The Fourteenth Amendment Due Process Clause requires certain minimum protections where an inmate's liberty interests are at stake, even in the context of confinement: When an inmate faces discipline, Due Process requires that he is entitled to: (1) a written notice of the disciplinary violation; (2) the right to call witnesses at his hearing; (3) assistance in preparing for the hearing; (4) a written statement of the reasons for being found guilty; and (5) a fair and impartial decision-maker in the hearing. *See Wolf v. McDonnell*, 418 U.S. 539, 559 (1974). However, this formal hearing is only required where the correctional institution "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995). Patterson has failed to allege what types of discipline he has been subject to as a result of these actions. He also does not indicate how they impose "atypical and significant hardship" on him. His conclusory statement that the actions violate due process will not suffice to state a claim. Accordingly, this claim will be dismissed.

Patterson's final claim is that he was retaliated against for filing grievances by vandalism of his returned grievances, cell searches, theft of property, harassment, and poor medical treatment. "Section 1983 imposes liability for retaliatory conduct by prison officials if the conduct was motivated in substantial part by a desire to punish [the] individual for the exercise of a constitutional right, such as filing lawsuits and grievances related to incarceration." *Alexander v. C.O. Fritch*, 396 F. App'x 867, 871 (3d Cir. 2010) (internal quotation marks and citations omitted). In a § 1983 retaliation claim, a plaintiff must prove: (1) the conduct leading to the alleged retaliation was constitutionally protected; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness of exercising his constitutional rights; and (3) his

13

protected conduct was a substantial factor in the adverse action suffered. *Id.*; *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Patterson failed to plead facts to show how his grievances were a substantial factor in the any of the alleged adverse actions he suffered. Patterson merely pleads legal conclusions that he was subject to retaliatory conduct. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Patterson's claim for retaliation will thus also be dismissed.

**CONCLUSION**

For the reasons set forth above, Administrative Defendants' motion to dismiss will be granted in part and denied in part. The Administrative Defendants' motion will be granted as to all of Patterson's Eighth Amendment claims, his Fourteenth Amendment unit-action claim, and his First Amendment retaliation claim. The motion will be denied as to Patterson's First Amendment Free Exercise claim.

Correctional Officer Defendants' motion to dismiss will also be granted in part and denied in part. The motion will be granted as to all claims against Officer Cunningham, except Patterson's Eighth Amendment sexual harassment claim, and all claims against Officer Gurry and Officer Dew, except Patterson's First Amendment Free Exercise claim.

Patterson will be granted leave to amend the deficiencies identified herein.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.