IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FLOYD E. PATTERSON, JR. | : | CIVIL ACTION |
| v. | : | No. 16-1604 |
| JANINE L. QUIGLEY, et al. | : | |

**MEMORANDUM**

Juan R. Sánchez, C. J.                                                                                                September 6, 2019

Pro se Plaintiff Floyd E. Patterson, Jr., an inmate in the State Correctional Institute at Somerset, brings claims pursuant to 42 U.S.C. § 1983 against Defendants Warden Janine L. Quigley, Lieutenant Miguel Castro, and Correctional Officers Cunningham, Dew, and Gurry for constitutional violations that occurred while he was incarcerated at Berks County Jail. Warden Quigley and Lieutenant Castro (collectively, the Administrative Defendants) and Correctional Officers Cunningham, Dew, and Gurry (collectively, the Correctional Officer Defendants) move for summary judgment pursuant to Federal Rule Civil Procedure 56. Because Patterson's claims against the Correctional Officer Defendants are barred by the applicable statute of limitations and because Patterson failed to exhaust his administrative remedies with regard to his claim against the Administrative Defendants, Defendants' Motion for Summary Judgment will be granted.

**BACKGROUND**[1]

Patterson asserts various constitutional violations that occurred while he was incarcerated at Berks County Jail (BCJ). Patterson's only remaining claims in this action include a Free Exercise

---

[1] In determining whether to grant summary judgment, the Court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

claim against the Administrative Defendants, a Free Exercise claim against Officers Gurry and Dew, and an Eighth Amendment Claim against Officer Cunningham.

Patterson's Free Exercise claims are based upon his allegation that he, as a Muslim, was prevented from exercising his right to practice his religion. Specifically, Officer Gurry, on or before June 6, 2014, threatened Patterson and told him to shut-up during religious services. *See* Patterson Dep. 48:2-48:13; Defs.' Ex. C. Patterson subsequently submitted a grievance form complaining of Officer Gurry's conduct on June 6, 2014. *See* Defs.' Ex. C. Similarly, Patterson's Free Exercise claim against Officer Dew is based on one occasion when Officer Dew intentionally removed Patterson from a list of inmates who were permitted to leave their block to attend religious services. *See id.* 81:23-83:10. Officer Dew then refused to allow Patterson to attend his religious services. *See id.* Patterson testified that this single incident occurred sometime in 2014. *See id.* 83:11-83:21.

Patterson's Free Exercise claim against Warden Quigley and Lieutenant Castro is based on their knowledge and acquiescence of the Correctional Officer Defendants' conduct and other conditions or incidents that deprived Patterson of his right to exercise his Muslin religion. Aside from the individual incidents discussed above, on at least two occasions, Patterson was kicked out of religious services and banned from attending for periods of one-to-four weeks by other correctional officers. *See id.* 90:11-94:18; 100:2-102:3. Patterson filed grievances and spoke about these issues with Lieutenant Castro. *See id.* 88:23-90:10. Despite disagreeing with Lieutenant Castro's responses to his grievances, Patterson never appealed any of the responses to Warden Quigley. *See* Defs.' Ex. C & D; Patterson Dep. 76:25-77:7; 116:19-117:2 120:4-120:17; 127:5-128:2. He also wrote and spoke to Warden Quigley about the ban on him attending religious services. *See id.* 94:19-97:16. Warden Quigley informed Patterson he needed to use the grievance

2

procedures to have her address the issues. *See id.* 95:20-95:24. Subsequently, Patterson submitted an "inmate communication form" rather than a grievance form. *See id.* 96:13-96:23; Defs.' Ex. E.

Also underlying his Free Exercise claim, Patterson testified that the Special Operation Group (SOG) officers hold guns during his Islam religious services and it makes it difficult for him to focus on his religious practice. *See id.* 106:19-106:22; 125:24-126:21. He also testified that the SOG officers do not always carry guns around Berks and they especially do not carry guns during other religious services. *See id.* 107:2-110:6. Patterson filed at least one grievance regarding this practice in 2014. *See* Defs.' Ex. C (BERKS136). Although Lieutenant Castro stated in a response to Patterson's grievance on this issue that "custody personnel are at all major religious services," Patterson, again, did not appeal to Warden Quigley. *See id.* 111:8-114:20.

Patterson's Eighth Amendment Claim is based on multiple incidents which all occurred before May 2014. *See id.* 136:3-145:5; 148:12-148:17. Officer Cunningham strip searched Patterson multiple times, made sexually inappropriate comments, and on at least occasion, forced Patterson to "jerk him off." *See id.*

Based on the above facts, on April 4, 2016, Patterson filed a complaint pursuant to 42 U.S.C. § 1983 against the Administrative Defendants and three Berks County Commissioners. *See* Compl., ECF No. 3. On June 6, 2017, Patterson filed an Amended Complaint in which he dropped his claims against the Commissioners and asserted new claims against the Correctional Officer Defendants. *See* Am. Compl., ECF No. 36. The Administrative and Correctional Officer Defendants separately filed Motions to Dismiss all of Patterson's claims. *See* Mot. to Dismiss, June 20, 2017, ECF No. 43; Mot. to Dismiss, Aug. 15, 2017, ECF No. 47. Patterson submitted a response to the Administrative Defendants' Motion but did not submit a response to the Correctional Officer Defendants' Motion. The Court granted in part and denied in part both

motions, leaving only the claims listed above. *See* Mem. and Order, Mar. 30, 2018, ECF Nos. 50-51. The Court then ordered Defendants to file an answer to the Amended Complaint. *See* Order, Apr. 26, 2017, ECF No. 52.

On November 15, 2018, Defendants timely filed this Motion for Summary Judgment seeking judgment in their favor on all remaining claims in the Amended Complaint. Patterson did not file a response to Defendants' Motion.[2] The Court heard oral argument on the Motion on February 5, 2019. Defendants' Motion is now ripe for disposition.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute is one where "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational

---

[2] During oral argument for this motion held February 5, 2019, Patterson stated he filed a response to the Motion. The Court did not receive any response and informed Patterson it would consider any response submitted after the oral argument. To date, Patterson has not filed any response.

trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The Court first turns to Patterson's claims against the Correctional Officer Defendants.

The Correctional Officer Defendants argue they are entitled to summary judgment because Patterson's claims are time-barred. They argue the statute of limitations for § 1983 claims in Pennsylvania is two years, and the claims against them are predicated on events that occurred between May and August 2014. Because Patterson did not file his Amended Complaint against them until June 2017, they assert it is untimely.[3]

Section 1983 does not provide its own statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). Rather, "[t]he length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace*, 549 U.S. at 387). Under Pennsylvania law, the statute of limitations for a § 1983 claim is two years. *See* 42 Pa. Cons. Stat. § 5524(2). In reviewing the record, the Court finds Patterson's claims against each of the Correctional Officer Defendants are time-barred.

Patterson's claim against Officer Gurry is based on the incident when Officer Gurry threatened Patterson and told him to shut-up during religious services. Patterson filed a grievance regarding Officer Gurry's conduct on June 6, 2014. *See* Defs.' Ex. C. Patterson then testified the conduct alleged in the June 6, 2014, grievance occurred before June 6, 2014, although he could

---

[3] The Correctional Officer Defendants' Motion to Dismiss also argued Patterson's claims were time-barred. As discussed at the oral argument, the Court addressed the issue of timeliness according to the facts in the complaint which alleged claims between February 14, 2014 and July 28, 2015. For purposes of the Motion to Dismiss, the Court treated Patterson's claims as timely. Defendants now argue, based on the summary judgment record, that Patterson's claims are time-barred.

5

not recall the exact date it occurred. *See* Patterson Dep. 47:2-48:13. Patterson also testified his remaining claim against Officer Gurry is based *solely* on the incident when Officer Gurry threatened Patterson during religious services. *See id.* 78:6-78:12. Considering this single incident with Officer Gurry occurred on or before June 6, 2014, and Patterson filed his Amended Complaint first alleging this claim against Officer Gurry on June 6, 2017—approximately three years later—Patterson's claim against Officer Gurry is time-barred. *See Robinson v. Cty. of Allegheny*, No. 09-1066, 2009 WL 3853803, at *2 (W.D. Pa. Nov. 17, 2009) (dismissing plaintiff's § 1983 claims that accrued more than two years before she initiated the action).

Patterson's claim against Officer Dew is similarly time-barred. Patterson testified Officer Dew, on one occasion, intentionally removed him from a list of inmates who were permitted to leave their block to attend religious services. *See* Patterson Dep. 81:23-83:10. Patterson testified this single incident occurred sometime in 2014, although he could not remember the exact date. *See id.* 83:11-83:21. Accordingly, with Officer Dew's conduct occurring at some point in 2014, and Patterson's filing of his Amended Complaint alleging his claim against Officer Dew approximately three years later on June 6, 2017, Patterson's claim against Officer Dew is time-barred. *See Akinola v. Doe*, 165 F. App'x 242 (3d Cir. 2006) (affirming district court's dismissal of § 1983 action filed four years after the claim accrued).

Regarding Officer Cunningham's conduct, Patterson testified his claim is based on multiple incidents before May 2014, when Officer Cunningham strip searched Patterson, made sexually inappropriate comments, and on at least occasion, forced Patterson to "jerk him off." *See id.* 136:3-145:5; 148:12-17. Patterson also testified, after May 2014, Officer Cunningham did not strip search him alone and did not engage in any other conduct underlying his Eighth Amendment sexual assault claim. *See id.* 146:19-147:1. In fact, Patterson stated the last time Officer

6

Cunningham was present during one of his strip searches was in early 2015. *See id.* 147:3-147:15. With Officer Cunningham's conduct occurring on or before May 2014, and Patterson's filing of his Amended Complaint alleging his claim against Officer Cunningham on June 6, 2017, Patterson's Eighth Amendment is time-barred. *See Walker v. Fisher*, 150 F. App'x 160, 161-62 (3d Cir. 2005) (holding § 1983 claim was untimely because it was filed nearly a year after the limitations period had expired). Because there is no genuine issue of material fact that Patterson's claims against the Correctional Officer Defendants are time-barred, the Court will grant summary judgment in the Correctional Officer Defendants' favor.

Turning to Patterson's First Amendment claim against the Administrative Defendants, Warden Quigley and Lieutenant Castro argue they are entitled to summary judgment because Patterson failed to exhaust his administrative remedies.[4] The Prison Litigation Reform Act (PLRA) requires prisoners to present their claims through an administrative grievance process prior to seeking redress in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). However, a prisoner is not required to exhaust his claim where a prison's administrative procedures are "unavailable" to him, including when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1853 (2016). "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials might promise) it operates as a

---

[4] The Administrative Defendants also argue, in the alternative, they are entitled to qualified immunity. *See* Defs.' Mot. for Summ. J. 10-11, Nov. 11, 2018, ECF No. 62-2 . Because the Court finds Patterson failed to exhaust his administrative remedies within BCJ, the Court does not address qualified immunity.

7

simple dead end." *Id.* at 1859-60. "Failure to exhaust is an affirmative defense the defendant must plead and prove." *Small v. Camden Cty.*, 728 F.3d 265, 268-69 (citing *Jones v. Bock*, 549 U.S. 199, 212, 216-17 (2007)). Whether a defendant has met this burden is a question of fact for the Court to determine. *See id.* at 269-70.

Defendants must first prove the availability of administrative remedies to Patterson. *See id.* at 271. In this case, Defendants cite to the Berks County Jail Inmate Handbook (BCJ Handbook) to show Patterson's knowledge and access to BCJ's grievance procedures. *See* Defs.' Ex. A. Specifically, Patterson acknowledged his receipt of the BCJ Handbook each time he was processed at BCJ—approximately three to five times. *See* Patterson Dep. 17:2-17:3; 20:7-22:17. Additionally, Patterson testified he knew about the grievance and appeals procedure. *See, e.g.*, *id.* 21:15-22:3. In response to Defendants' Motion, Patterson failed to provide evidence that any correctional officer or prison official prevented him from taking advantage of the grievance procedures or appeals process. Additionally, Patterson has not produced evidence showing the BCJ administrative remedies "operate[] as a simple dead end." *See Ross*, 136 S. Ct. at 1859. In fact, Patterson did not appeal a single grievance response to Warden Quigley such that he would know or believe she was "unable or consistently unwilling to provide any relief to aggrieved inmates." *See id.* There is no genuine issue of material fact that Patterson knew of, and had access to, BCJ's grievance procedures.[5] Thus, administrative remedies were available to him.

---

[5] Patterson testified he did not file a grievance regarding his removal from religious services, on one occasion, in 2014 because Lieutenant Castro approached him in person and informed him that inmates were "kicked out of Jumu'ah service" because they "broke the rules." *See* Patterson Dep. 89:3-89:15. Lieutenant Castro also informed Patterson the issue could not be subject to grievance because the inmates had violated the rules of religious services. *See id.* Patterson testified he believed filing a grievance would have been futile because Lieutenant Castro, as the grievance coordinator, informed him he could not submit a grievance on the issue due to the alleged breaking of the rules. *See id.* 89:20-90:10. Taken in the light most favorable to Patterson, this fact could create a dispute of material fact of whether Lieutenant Castro's made administrative remedies

Defendants must then prove Patterson failed to properly exhaust administrative remedies "in accordance with the applicable procedural rules," defined by the prison grievance process itself. *See Small*, 728 F.3d at 272. Defendants' contend Patterson failed to submit a grievance regarding his First Amendment claim regarding Officer Dew's conduct and, for the grievances he did submit regarding other First Amendment violations, he failed to appeal them according to the applicable grievance procedures. According to the BCJ Handbook, inmates must file "[w]ritten grievances citing alleged violations . . . on an Inmate Grievance Form and place [them] in the housing unit collection box." *See* Defs.' Ex. A, at 33, § 9.2. "The grievance process may be used by any inmate . . . and may be filed . . . to report an alleged violation of civil or constitutional rights." *See id.* § 9.3.1. Grievances were required to be answered and returned to inmates within 15 days of submission. *See id.* at 34, § 9.3.7. Inmates were permitted to appeal a grievance response "by submitting a written appeal to the warden within 15 days of issuance of the grievance decision." *See id.* § 9.3.8.

Regarding his First Amendment claim, Patterson submitted a grievance addressing the incident with Officer Gurry at religious services. *See* Defs.' Ex. C. He also submitted at least four other grievances regarding interference with his religious services. *See* Defs.' Ex. D. These grievances generally complained that SOG personnel (1) refused to allow Islamic inmates to talk

---

unavailable to Patterson. Nevertheless, after this one incident, Patterson submitted other grievances regarding his First Amendment claim on different occasions and testified to continuing to submit grievances. *See id.* 94:16-95:22; 105:24-106:1 (discussing a second incident when he was removed from religious services) (Q: "But you filed this [May 2, 2014] grievance, anyway; would that be accurate?" A: "Yes."). Also, Warden Quigley later informed Patterson to submit a grievance form to receive a response to the ongoing issues. *See id.* 95:7-96:23. Thus, because Patterson continued to file grievances—although he did not appeal them—the Court finds the testimony regarding this single incident to be insufficient to show Lieutenant Castro thwarted Patterson's ability to use the administrative remedies such that it made them unavailable to address his First Amendment Claims.

9

or shake hands as permitted by their religious beliefs, (2) brought guns into the Islamic religious services, (3) assaulted another inmate for discussing the Islamic religion, and (4) refused to provide adequate meals for inmates participating in Ramadan. *See generally id.* (BCJ Inmate Grievance Forms BERKS133 (May 2, 2014); BERKS136 (July 11, 2014); BERKS135 (July 15, 2014); BERKS 141 (June 21, 2015)). Patterson received a response to each of these grievances from Lieutenant Castro within the requisite 15-day period. *See id.* For the grievances Patterson submitted and received a response, he did not appeal the responses to Warden Quigley pursuant to BCJ Handbook § 9.3.8. *See* Patterson Dep. 76:25-77:7; 116:19-117:2 120:4-120:17; 127:5-128:2. Patterson did not submit a grievance regarding the incident with Officer Dew.[6] *See id.* 66:15-67:9; 83:22-84:1.

Based on the evidence provided, the Court finds Patterson failed to exhaust his administrative remedies through the BCJ grievance procedures with regard to his First Amendment claims against the Administrative Defendants. For the grievances Patterson did submit, he failed to appeal any of the grievance responses to Warden Quigley as required by § 9.3.8 of the BCJ Handbook. In his deposition, Patterson does not dispute that he failed to appeal his grievances. *See* Patterson Dep. 117:16-117:19 ("[E]ven though I know I should have filed an appeal, if I thought about going this far back then, I probably would have had at that point in time."); *see also id.* 75:12-75:25; 76:25-77:3; 116:19-117:6; 120:4-120:6; 127:25-128:2; 134:2-134:4. Although

---

[6] Patterson testified to asking Officer Dew for a grievance form regarding his removal from the religious services list and that Officer Dew stated "All right. It's not going to go nowhere. I'm just going to search your cell tomorrow." *See* Patterson Dep. 86:12-86:16. However, Patterson stated he responded by continuing to ask for the grievance form and that he was subsequently provided with a grievance form to file. *See id.* 86:19-86:20. Once receiving the grievance form, Patterson chose not to file it regarding the incident with Officer Dew. *See id.* 86:19-87:8. Because Patterson testified to receiving a grievance form after the incident with Officer Dew, the Court finds the administrative procedures were still available to him had he submitted the form.

10

Patterson testified he did not agree with Lieutenant Castro's responses to his grievances, he also testified that no BCJ personnel prevented him from appealing the responses by threat or otherwise. *See id.* 134:24-135:1 (Q: "You could have appealed this, though; couldn't you?" A: "I believe so, yes."); *see also id.* 68:18-68:23; 77:11-77:17; 130:10-130:12. Patterson merely asserts he felt appealing the grievance responses would not have had any effect on the issues. *See id.* 68:24-69:4; 77:18-77:22; 120:18-121:8. Rather than appeal, Patterson decided on his own that an appeal would be futile. *See, e.g.*, *id.* 68:18-68:23; 77:11-77:17; 130:10-130:12. In fact, Patterson admitted his decision to not file or appeal grievances was influenced by "inmates who just like to gossip" who stated generally that guards would "send [him] to the hole" if he continued to complain. *See id.* 69:5-69:16 ("[T]he threats that I have received are third-party threats, threats from other inmates . . . . Mind you, these are also inmates who just like to gossip. These are also inmates who it's kind of hard to even believe what they say, because all they're looking for is entertainment."). Patterson's belief of the appeals process as futile is unwarranted considering he failed to appeal any of his grievance responses to Warden Quigley to see her resolution of the issues or to afford the BCJ grievance and appeals system an opportunity to address his concerns beyond Lieutenant Castro's responses. *See Porter v. Nussie*, 534 U.S. 516, 525 (2002) (discussing Congress's intent in implementing the exhaustion requirement as "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case").

During oral argument, Patterson argued he did not appeal Lieutenant Castro's responses because they stated Patterson's issues were not "grievanceable." Nonetheless, Patterson has not provided any reason why he could not appeal those responses to Warden Quigley for her to address whether the issues were "grievanceable." These facts in the record are sufficient to show Patterson failed to comply with BCJ's grievance policy, and he has not produced evidence suggesting

11

exhaustion should be excused. Accordingly, Patterson has failed to establish a genuine issue of material fact regarding whether he exhausted administrative remedies and the Administrative Defendants are entitled to summary judgment in their favor. *See Jackson v. Taylor*, 467 Fed. App'x 98 (3d Cir. 2012) (granting summary judgment in favor of defendants when prisoner did not exhaust administrative remedies because he failed to properly comply with the grievance appeals process).

**CONCLUSION**

For the reasons stated above, the Court will grant Defendants' Motion for Summary Judgment and enter judgment in favor of the Administrative Defendants and the Correctional Officer Defendants on all counts.

An appropriate order follows.

    BY THE COURT:

    /s/ Juan R. Sánchez
    Juan R. Sánchez, C.J.